UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RITA MANSHARAMANI,                )
                                  )
               Plaintiff,         )   Case No. 5:05-cv-41
                                  )
v.                                )
                                  )
MICHIGAN STATE UNIVERSITY         )
BOARD OF TRUSTEES, et al.,        )   **REPORT AND RECOMMENDATION**
                                  )
               Defendants.        )
_____ )

This is an employment action. Plaintiff filed her *pro se* complaint on February 18, 2005. Plaintiff later retained Attorney Diane K. Davis Waller to represent her in this lawsuit. (docket # 12). Plaintiff is a former employee of Michigan State University ("MSU"). Her complaint seeks an award of monetary damages under Title VII and the Michigan Whistleblowers' Protection Act. Plaintiff's complaint named eight defendants. The three defendants remaining at this juncture[1] are as follows:

   (1) MSU's Board of Trustees,
   (2) MSU's Department of Forestry, and
   (3) the Chairman of MSU's Forestry Department, Dr. Daniel Keathley.

---

[1] On August 1, 2005, pursuant to stipulation, the court entered an order dismissing plaintiff's claims against the five "federal defendants": United States of America; USDA/CSREES; EEOC; Dr. Catalino Blanche, National Program Leader at USDA/CSREES; and Mr. James Neely Jr., EEOC District Director. (docket # 30).

On March 14, 2005, these three defendants filed a Rule 12(b)(6) motion to dismiss, on the ground that plaintiff failed to file her administrative charge with the EEOC within 180 days of the alleged acts of discrimination, as required by 42 U.S.C. § 2000e-5(f)(1). (docket # 5).

On March 16, 2005, the court issued an order notifying plaintiff that she had until April 13, 2005, to file her response to defendants' motion. (docket # 9). On April 8, 2005, plaintiff's attorney filed her appearance. The same day plaintiff's attorney filed a motion requesting an extension of time within which to respond to defendants' motion. (docket # 13). The court granted the motion, and extended plaintiff's deadline for filing her brief until May 16, 2005. (docket # 17). On May 16, 2005, plaintiff filed her brief arguing that the complaint alleges two claims: (1) a federal Title VII claim; and (2) a state-law claim under Michigan's Whistleblower Protection Act ("WPA"). (docket # 22).[2] Plaintiff's brief simply ignored defendants' argument that her Title VII claim or claims were time-barred because plaintiff failed to file her administrative charge with the EEOC within the statutory 180-day limitations period. Upon review, I recommend that defendants' motion to dismiss be granted.

**Applicable Standards**

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004). The court must construe

---

[2] Plaintiff's brief contained a request for additional time to "further elucidate" claims not addressed in the brief. (docket # 22 at 9). Plaintiff's counsel indicated that her client was in India and was not expected to return until the end of June 2005. In the six months that have passed since the brief was filed, plaintiff and her counsel have done nothing to "further elucidate" plaintiff's claims.

the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *See Flaim v. Medical College of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005); *Montgomery v. Huntington Bank,* 346 F.3d 693, 698 (6th Cir. 2003). While the standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005); *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *City of Monroe Employees Ret. Sys. v. Bridgestone, Inc.*, 399 F.3d 651, 665 (6th Cir.), *cert, denied*, 126 S. Ct. 423 (2005). Courts are not required to conjure up unpleaded allegations. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004). The court need not accept as true legal conclusions or unwarranted factual inferences. *See Mezibov*, 411 F.3d at 716; *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003); *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "In practice, a '. . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under <u>some</u> viable legal theory.'" *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see Mezibov*, 411 F.3d at 716; *Fidel v. Farley*, 392 F.3d 220, 226 (6th Cir. 2005).

        Plaintiff elected to support her complaint with exhibits. Those exhibits have been considered in evaluating defendants' motion to dismiss, but have not converted the defendants' motion to dismiss into a motion for summary judgment. *See* FED. R. CIV. P. 10(c); *Benzon v.*

*Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 603-04 (6th Cir. 2005); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Never Tell Farm, LLC v. Airdrie Stud, Inc.*, 123 F. App'x 194, 197 (6th Cir. 2005).

**Facts**

**A.     Plaintiff's Initial Employment by MSU as a Secretary**

Plaintiff states that she is of Indian origin and was hired by MSU in 1997 because she was a "minority candidate." Plaintiff began her employment at MSU as a secretary on June 7, 1997. Plaintiff held this secretarial position in MSU's Physiology Department until May 31, 1998.

**B.     Employment by MSU as an Administrative Assistant**

On June 1, 1998, plaintiff accepted employment as an administrative assistant within MSU's Forestry Department. Plaintiff alleges that she was an at-will employee. Her administrative assistant position was funded by an Eastern Hardwoods grant. Plaintiff's employment in the administrative assistant position was for a specific time period with an end date. Plaintiff was a full-time employee from June 1, 1998 through December 31, 2002, and a part-time employee in 2003.

Plaintiff alleges that Ms. Karin Miller, a white female, plaintiff's predecessor in the administrative assistant position, had full signature authority to approve expenses charged to the Eastern Hardwood grant. Plaintiff states that she did not receive the same authority as her predecessor.

**C.     Alleged Instances of Improper Conduct**

Plaintiff's complaint is not a model of clarity. It contains fragmented allegations concerning numerous instances of allegedly improper conduct by various individuals, most of which purportedly occurred years before plaintiff filed her administrative charge with the EEOC on June 14, 2004. Plaintiff's allegations are addressed in the numbered paragraphs set forth below:

1.     <u>2000:  Release Time</u>

Plaintiff alleges that in early 2000, she was in the process of pursuing an associates degree at Lansing Community College and that she used all her vacation and personal leave time in that year to attend a class. She alleges that a white, male named Justin Zukosyki "never took formal approval for time off work" and that his time off was not recorded in MSU's attendance system. Plaintiff alleges that there were unspecified earlier occasions where Dr. Keathley denied plaintiff "educational assistance" without further elaboration. Plaintiff's complaint expresses her dissatisfaction that in the summer of 1998 Mr. Zukosyki received "overtime payment for the difference in pay when he was working as a temporary then hired as [a] clerical employee."

2.     <u>Mid- 2001:  Misuse of Funds</u>

Plaintiff states that in approximately mid-2001, she pointed out to Dr. Keathley and Mr. Brian Day, Senior Contract and Grant Officer that "principal investigators" were involved in the misuse and mismanagement of grant funds.

3.     <u>May 30 and June 5, 2002:   Dr. Kamdem's Conduct</u>

Dr. Kamdem is an African American professor and the Program Director of the hardwood research program. Plaintiff alleges that on May 30, 2002, Dr. Kamdem was angry and behaved unprofessionally. She states that a Dr. Matuanana characterized Dr. Kamdem's behavior

as acting "like a lion." Plaintiff alleges that, the matter was brought to the attention of the administrator on or around June 5, 2002, no action was taken, and that "unprofessional behavior by [the] principal investigators" has adversely affected her health. She alleges that on an unspecified date Dr. Kamdem insulted her:

> There was another occasion when Dr. Kamdem insulted me in the presence of an Indian graduate student -- Shireesha Ganti. The context was I was asked for support documentation. The student was feeling bad for Dr. Kamdem's unprofessional behavior. Location: Room 154 Natural Resources.

### 4. September 2002: Reduction in Work Hours

Plaintiff alleges that on or around September 16, 2002, she submitted two letters to her immediate supervisor, Dr. Keathley, requesting a promotion in the form of "reclassification /up gradation" of her position. Plaintiff asserts that Dr. Keathley responded by stating, "Minorities don't get promotion." On or about September 17, 2002, plaintiff signed a Personal Action Notification (PAN) form with a December 31, 2002 end date. Plaintiff believes that requiring her to sign this document constituted retaliation.

On January 1, 2003, plaintiff was placed in a part-time administrative assistant position within MSU's Forestry Department. Plaintiff attributes this reduction in her work hours, less desirable position, and a change in her duties and benefits to Dr. Keathley.

### 5. November 11, 2002: Dr. Keathley's Conduct

On November 11, 2002, plaintiff was "humiliated" by Dr. Keathley in an unspecified manner in the presence of co-worker Ms. Barbara Anderson. Plaintiff does not allege any physical contact by Dr. Keathley, and the apparent verbal exchange concerned someone, presumably plaintiff, contacting the contract and grant office.

      6.      <u>January 13, 2003: Plaintiff's Verbal Exchange with Ms. Graysmith</u>

On January 14, 2003, plaintiff approached Computer Technician, Ms. Carol Graysmith and asked Graysmith for documentation supporting Graysmith's purchase of a computer. Plaintiff believed that the cost of the computer had been charged to the hardwood federal grant. Ms. Graysmith told plaintiff to get out of the room and slammed the door. Plaintiff complains that Ms. Graysmith was rude. Other unpleasant interactions plaintiff experienced with her co-workers at MSU are collected under a heading "insulted, humiliated by coworkers, [and] principal investigators," but the complaint is devoid of factual allegations concerning the dates on which these exchanges purportedly took place and the context within which they occurred.

      7.      <u>Sexual Innuendos</u>

Under the heading "nit picking and harassment" plaintiff alleges that at unspecified times Dr. Keathley indulged in "sexual innuendos, verbal, visual and graphic" and that the human resources department and plaintiff's union failed to respond to plaintiff's satisfaction.

      8.      <u>Supervision of Barbara Anderson</u>

Plaintiff alleges, "Ms[.] Barbara Anderson ([a] white individual) and I were coordinating grant work. She had a lower grade and I was in a higher grade. Barb was not allowed to work under me and I was not allowed to supervise Barbara and guide her on complexities of policies and grants."

      9.      <u>January 15, 2003:  Verbal Exchange with Dr. Han</u>

On January 15, 2003, plaintiff had a verbal exchange with Dr. Han at 9:00 a.m. in room 154. Plaintiff's complaint alleges as follows:

> Context: Reimbursement voucher-refused to provide title of the project. Dr. Han stated, "You are appointed here to cover things up. You should on your own respond to the Contract and Grant Office memo stating yes the purchase made will be exclusively used for the research project.["] He added by saying, "I don't work for you. I can spend the money the way I want. This is a political grant. I am not moving anywhere. I am tenured.["] The tone in which he was talking was rude[.] [H]e was angry. The level of his voice was loud[].

10.  April 3, 2003: E-mail From Plaintiff to Dean Armstrong

On or about April 3, 2003, plaintiff sent and e-mail to Dean Armstong of the College of Agriculture and Natural Resources at MSU. On April 7, 2003, Dean Armstrong's secretary responded by telephone and advised plaintiff that Dean Armstrong was not willing to override the department chairman's decision.

11.  April 30, 2003:  Performance Evaluation

Plaintiff alleges that on April 30, 2003, MSU gave her an "unsatisfactory" performance evaluation. The supervisor's comments indicated that plaintiff was improperly approaching her work as a gatekeeper rather than facilitating others in completing tasks. She was advised that change was required, and the evaluation concluded with the statement that plaintiff was not currently meeting the employer's expectations. Plaintiff refused to sign this evaluation. Plaintiff expresses a belief that her poor performance evaluation was in retaliation for unspecified irregularities she reported to Dr. Blanche.

12.  July 1, 2003:  Plaintiff's Office Assignment and Equipment

On or about July 1, 2003, Dr. Kamdem and Dr. Keathley purportedly took the keys to plaintiff's office, removed her passwords from the computer and moved plaintiff to an isolated workspace with a non-working computer, no printer and no telephone. Plaintiff was moved to a

different office on August 29, 2003. Plaintiff states that she was not provided with keys, voice mail, or access to records.

   13. <u>September 12, 2003: Plaintiff's Receipt of MSU's Notice of Employment Termination</u>

On September 10, 2003, Dr. Keathley signed a letter notifying plaintiff of the termination of her employment. Dr. Keathley stated, "I regret that I must inform you that after reviewing the future needs of the Eastern Hardwoods Utilization Program, I have reached a conclusion that the continuing needs of the program do not require reappointment of your position. Accordingly, I am informing you that as of the end of your current appointment period on December 31, 2003, your appointment in the Department of Forestry will not be renewed." On September 12, 2003, plaintiff received the notice of MSU's termination of her employment.

**D.     June 14, 2004 Administrative Charge**

On June 14, 2004, plaintiff filed her administrative charge with the EEOC against MSU. (attachment, docket # 1). In response to the question asking plaintiff to describe the discrimination she had experienced, plaintiff stated as follows:

   1. Full authority was given to white individuals in lower gra[de and I][3] was denied authority to okay expenses charged to the federal gran[t for which] I was the coordinator.

   2. White individual who was fresh from college had min[imal] experience was hired in a higher grade.

   3. I was denied educational assistance or leave to pursue pro[fessional] development.

---

[3] The printout of plaintiff's administrative charge that she attached to her complaint is truncated along the right margin. The bracketed text represents an attempt to discern the missing text from corresponding text in the complaint.

4. I was mocked, ridiculed, subjected to slurs and race relat[ed] comments, "You Indians are hungry", "[Take this] typewriter, type", "You Indians have educational degrees [and expect higher] position grades here", "You have so say" by coworkers and pri[ncipal] investigators. When complained to supervisor, Dr. Keathley ign[ored taking] any action or preventing it.

5. Principal investigator(s) acted like a lion because I am n[ot white] looking.

6. Coordination /review of grants is higher grade position. Fo[restry] Chariman said "Minorities don't get promotion"[.] Human Resourc[es did not] investigat[e]. Human resources was prevented [from investigating] by Dr. Keathley [].

7. Forestry Chairman, Dr. Keathley indulged in sexual in[n]uendo verbal, visual and graphic. Department of human resources fail[ed].

8. Discrimination was continuous.

**E.    November 18, 2004 Receipt of EEOC's Right-To-Sue Letter**

On November 18, 2004, the EEOC notified plaintiff that it was closing its file on plaintiff's charge (EEOC Charge No. 230-2004-02637) because plaintiff failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible for the EEOC to resolve plaintiff's charge. The second paragraph of this same document constituted the EEOC's its right-to-sue letter. The EEOC notified plaintiff that she was required to file her civil lawsuit in this court within 90 days of her receipt of the November 18, 2004 right-to-sue letter. Plaintiff affirmatively alleges that she received the right-to-sue letter on November 18, 2004. (Complaint, ¶ 12). Plaintiff did not file her complaint in this court until February 18, 2005, 92 days after her receipt of the right-to-sue letter.

**Discussion**

1.   Title VII Claims

Plaintiff's purported Title VII claims suffer from numerous fatal defects. Plaintiff was not employed by Dr. Keathley or MSU's Board of Trustees. Plaintiff was employed by MSU and held a position in its Forestry Department. Plaintiff's complaint fails to state a Title VII claim against Dr. Keathly or the MSU Board of Trustees because they were not plaintiff's employer. *See Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)("An individual employee/supervisor who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."); *see also Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 n. 1(6th Cir. 2000); *Ford v. Tennessee Human Rights Comm'n*, No. 99-5415, 2000 WL 125903, at * (6th Cir. Jan. 28, 2000)("Ford's claims as to the individual defendants are not cognizable as Title VII and the ADEA do not permit employees and supervisors to be sued in their individual capacities."); *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998)(Title VII and the ADEA define "employer" in essentially the same way, and supervisors and other employees fall outside that definition and are not liable under Title VII and the ADEA).[4]

---

[4] I note *sua sponte* that Eleventh Amendment immunity bars all plaintiff's purported claims with the exception of the Title VII claim against MSU as plaintiff's employer. *See Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Generally, the Eleventh Amendment is a bar to claims in this court against MSU, the MSU Board of Trustees, and the Chairman of MSU's Forestry Department in his official capacity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir.), *cert. denied*, 125 S. Ct. 157 (2004); *Estate of Ritter v. University of Mich.*, 851 F.2d 846, 849 (6th Cir. 1988); *Sharma v. Ohio State Univ.*, 25 F. App'x 243, 248-49 (6th Cir. 2001); *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993); *Hill v. Michigan State Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001); *Wunderlin v. Western Mich. Univ.*, No. 2001 WL 1301214, at * 2 (W.D. Mich. Apr. 20, 2001). Congress abrogated Michigan's Eleventh Amendment immunity as employer with regard to Title VII claims. *See Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). Plaintiff's state law WPA claim against defendants is barred by Eleventh Amendment immunity. *See Ernst v. Rising,* 427 F.3d 351, 367 (6th Cir. 2005);

Dr. Keathley and the Board of Trustees are entitled to judgment in their favor on the alternative basis that only MSU was named as the respondent in plaintiff's administrative charge. Title VII authorizes the filing of a suit only "against the respondent named in the [administrative] charge." 42 U.S.C. § 2000e-5(f)(1). "A party not named in the EEOC charge may not be sued under Title VII." *Romain v. Kurek*, 772 F.2d 281, 283 (6th Cir. 1985); *see A've v. Service Employees Int'l Union*, 24 F. App'x 326, 330 (6th Cir. 2001).

Plaintiff's Title VII claims against MSU are time-barred on multiple grounds. Plaintiff failed to file her administrative charge with the EEOC within 180 days after the alleged acts of employment discrimination, and she failed to file her complaint in this court within 90 days of her receipt of the EEOC's right-to-sue letter. As a statutory prerequisite to the ability to bring suit under Title VII, a claimant must file a timely administrative charge with the EEOC or analogous state agency and receive a right-to-sue letter at the conclusion of the administrative proceedings. 42 U.S.C. § 2000e-5(f)(1); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). Plaintiff does not allege that she initiated proceedings with a State or local agency as provided by statute, therefore defendants are correct that the 180-day limitations period applies.[5] On September 12,

---

*see also Underfer v. University of Toledo*, 36 F. App'x 831, 834-35 (6th Cir. 2002). Any objections to this report and recommendation must necessarily address these Eleventh Amendment immunity issues.

[5] 42 U.S.C. § 2000e-5(e)(1) states, in pertinent part, as follows: "(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . ., except that in a case of an unlawful employment practice with respect to which a person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). Plaintiff did not "initially institute proceedings" with the Michigan Department of Civil Rights; therefore, she cannot claim entitlement to the 300-day period. *See Nichols v. Muskingum College*, 318 F.3d 674, 677-78 (6th Cir. 2003); *see also Johnson v. East Tenn.*

2003, plaintiff received MSU's notice that her employment would be terminated. Plaintiff waited until June 14, 2004, two hundred and seventy-six days after she received her termination notice, to file her administrative charge with the EEOC. "The usual rule in discrimination cases is that th[e] time for filing is 'triggered at the time the alleged discriminatory act occurred.'" *Cox v. City of Memphis*, 230 F.3d 199, 202 (6th Cir. 2000)(quoting *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991)). The statute of limitations begins to run when the employee is first notified of the allegedly unlawful employment practice. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980); *Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987). The starting date for the limitations period is "when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated." *Amini v. Oberlin College*, 259 F.3d 493, 499 (6th Cir. 2001). The proper focus when determining the starting point of the limitations period "is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Ricks*, 449 U.S. at 258; *see Page v. Metropolitan Sewer Dist. of Louisville & Jefferson County*, 84 F. App'x 583, 585 (6th Cir. 2003)("It makes no difference as to the running of the statute of limitations that [plaintiff] continued to work for [defendant]" because "[h]er ongoing employment was insufficient to prolong the life of her discrimination claim."); *Almond v. ABB Indus. Sys., Inc.*, 56 F. App'x 672, 679-80 (6th Cir. 2003). I find that plaintiff's Title VII claims are time-barred because plaintiff did not file a timely administrative charge with the EEOC.

---

*State Univ.*, No. 99-6418, 2000 WL 1182792, at * 2 (6th Cir. Aug. 16, 2000).

Plaintiff's Title VII claims are also time-barred because plaintiff did not file her complaint in this court within 90 days of her receipt of the EEOC's right-to-sue letter.  Title VII provides that an employment discrimination complaint must be filed within ninety days after the "giving" of notice by the EEOC of its dismissal of an administrative charge.  42 U.S.C. § 2000e-5(f)(1).  Federal courts "strictly enforce" the ninety-day statutory limit.  *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).  This ninety-day period for bringing suit begins when the right-to-sue letter is actually received.  *Peete v. American Standard Graphic*, 885 F.2d 331 (6th Cir. 1989).  Plaintiff alleges that she received her right-to-sue letter from the EEOC on November 18, 2004.  (docket # 1, ¶ 12).  Plaintiff's deadline for having her complaint filed with the court was February 16, 2005.  Plaintiff did not file her complaint until February 18, 2005, two days past the statutory deadline.

The ninety-day period for filing Title VII actions is in the nature of a statute of limitations.  *See Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 620 (6th Cir. 1983).  Defendants have timely asserted this defense.  Although the limitations period is subject to principles of equitable tolling on limited grounds, *see Graham-Humphreys*, 209 F.3d at 560-61; *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir. 1987), plaintiff has not asserted or proven any such grounds.  Absent grounds for equitable tolling, the district court is powerless to extend the ninety-day statutory period for even a single day.  *See Matthews v. Kilroy*, No. 95-4194, 1997 WL 377013, at * 3 (6th Cir. July 3, 1997);  *Hurley v. Tennessee Dep't of Human Servs.*, No. 96-5425, 1997 WL 144182 (6th Cir. Mar. 27, 1997); *Foreman v. Farmer Jack Grocery Stores*, No. 96-1280, 1997 WL 133316, at * 1 (6th Cir. Mar. 21, 1997); *Williams v. Sears, Roebuck & Co.*, 143 F. Supp. 2d 941, 944-45 (W.D. Tenn. 2001); *see also Portillo v. Zebra Tech. Corp.*, No. 05-1750, 2005 WL 3046253,

at * 2 (7th Cir. Nov. 14, 2005); *Richardson v. Georgia Pacific Corp.*, No. Civ. A. 04-293-CB-M, 2005 WL 1278833, at * 1 (S.D. Ala. May 26, 2005); *Toolan v. Board of Educ.*, Nos. 02-Civ. 6989 (DC), 03-Civ. 576 (DC), 2005 WL 22015437, at * 1 (S.D.N.Y. Aug. 25, 2003).  Upon review, I find that plaintiff's complaint fails to state any viable federal claim.

2.   State-Law Claim

Plaintiff's brief asserts that her complaint states a claim under Michigan's Whistleblowers' Protection Act ("WPA").  MICH. COMP. LAWS §§ 15.361-.369.  The WPA states, "A person who alleges a violation of this act my bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after occurrence of the alleged violation of this act." MICH. COMP. LAWS § 15.363(1).  This statute of limitations, if not met, "bars an action under the Whistleblowers' Protection Act, regardless of the remedy requested."  *Covell v. Spengler*, 366 N.W.2d 76, 79 (Mich. Ct. App. 1985); *see Niezgoski v. Quality Home Care, Inc.*, No. 250385, 2005 WL 176931, at *1 (Mich. Ct. App. Jan. 27, 2005).  Because plaintiff's last day of work at MSU was December 31, 2003, and she did not file her lawsuit until February 18, 2005, plaintiff's purported WPA claim is obviously barred by the 90-day statute of limitations.  MICH. COMP. LAWS § 15.363(1); *see also Mitchell v. Highland Park Bd. of Educ.*, No. 252747, 2005 WL 857383, at * 3 (Mich. Ct. App. Apr. 14, 2005); *Eisterhold v. Diversey Corp.*, No. 214868, 2001 WL 753849, at * 2-3 (Mich. Ct. App. Feb. 6, 2001)(upholding a trial court's grant of summary disposition and award of sanctions against a plaintiff because the plaintiff's WPA complaint, filed roughly six months after defendant's alleged wrongful conduct, was clearly barred by the 90-day statute of limitations).

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion be granted and that plaintiff's complaint be dismissed for failure to state a claim upon which relief can be granted.

Dated:   December 6, 2005               /s/  Joseph G. Scoville
                                        United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).